# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY W. BARBOUR, | Civil Action No. 11 - 1291 |
| Plaintiff, | |
| v. | Chief Magistrate Judge Lisa Pupo Lenihan |
| ALLEGHENY COUNTY, *et al.*, | |
| Defendants. | ECF Nos. 40, 55 |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the Motions to Dismiss filed by Defendant Allegheny County (ECF No. 40) and Defendants Coulter, Mazzocca, McGovern, Metz, Smarra, Springel, Williams and Zoller (ECF Nos. 55, 57). Plaintiff has filed Briefs in Opposition to the pending Motions (ECF Nos. 44, 63). After careful consideration of the submissions of the parties, the Motions will be denied.

### I.     Background

On October 7, 2011, Plaintiff filed a Complaint pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983. (ECF No. 1.) With leave of Court, Plaintiff filed an Amended Complaint on April 4, 2012. (ECF No. 33.) Plaintiff's claims stem from incidents that allegedly occurred following his attempted escape from the Allegheny County Jail on April 6, 2010. The Amended Complaint identifies the following Defendants: Allegheny County, Major James Donis ("Donis"); Sgt. Andrew J. Coulter ("Coulter"); C.O. Domenic D. Mazzocca, Jr. ("Mazzocca"); Cpt. James F. McGovern, Jr. ("McGovern"); C.O. Arii Metz ("Metz"); Sgt. August J. Smarra

1

("Smarra"); C.O. Scott Springel ("Springel"), Sgt. Carmelita D. Williams ("Williams"), and Sgt. Albert A. Zoeller ("Zoeller"). The individual Defendants are sued in their individual capacities, only. The Amended Complaint avers ten Counts and Defendants move to dismiss all Counts against them for various reasons.

## II. Plaintiff's Allegations

### A. The Assault

According to Plaintiff's Amended Complaint, a Code Red indicating a possible inmate escape was issued at the Allegheny County Jail ("ACJ") on the evening of April 6, 2010. (ECF No. 33 at ¶ 17.) Personnel at the ACJ suspected Plaintiff of attempting to escape. Id. During the next three hours, the individual Defendants and other personnel communicated with each other directly and by telephone and radio as they searched the facility. Id. at ¶ 18. Plaintiff alleges that during these communications, the individual Defendants reached a common agreement or understanding to physically batter him as punishment for attempting to escape. Id. at ¶ 19. Presumably Defendant Smarra apprehended Plaintiff in the ACJ's ventilation system near the employee parking lot, an unauthorized area for inmates. Id. at ¶ 20. Plaintiff contends that once he was seen, he immediately laid down on his stomach with his arms extended and repeated to Smarra: "I'm not resisting; I'm not resisting." Id. at ¶ 21. Smarra then grabbed Plaintiff and removed him from the ventilation duct. Id. at ¶¶ 21, 23. After that, Smarra allegedly threw Plaintiff through an opening in the ventilation panel, which caused him to drop three feet to the concrete floor in a mechanical room, then he continued to push Plaintiff into the walls and bounce him off nearby equipment. Id. at ¶¶ 23-24. Plaintiff landed in the doorway with his abdomen across a metal angle iron that formed the bottom part of the frame. Id. at ¶ 24. While Plaintiff was lying on the floor with his abdomen stretched across the angle iron, Smarra

struck him in the back with his foot, which caused Plaintiff to involuntarily soil himself. Id. at ¶ 25. Certain individual Defendants and others then arrived at the scene. Id. at ¶ 26.

Plaintiff was detained and removed to a secure area of the jail and several other guards arrived at the scene, including Defendant Donis and the remainder of the individual Defendants. Id. at ¶ 27. One guard was carrying and using a handheld video camera. Id. According to Plaintiff, the individual Defendants forced him to his knees but did not give him any orders. Id. at ¶ 29. After allegedly putting on leather gloves and stating, "I'm your worst nightmare," Donis began striking Plaintiff in the face. Id. at ¶ 30. Plaintiff contends that none of the individual Defendants made any attempts to stop Donis' attack and then they all took turns punching him in the face, landing at least 40 punches and ultimately breaking his nose. Id. Plaintiff was then restrained in handcuffs, which he contends were applied unnecessarily tight and in a painful manner, and the individual Defendants continued to punch him. Id. at ¶ 31. Plaintiff was then lifted by his arms, causing his shoulders to over-rotate in a painful manner. Id. at ¶ 32. He was forced to walk down a hallway hunched over with his head down because his hands were pulled upward, and he maintains that he was repeatedly kicked in the groin from behind by one of the individual Defendants who was following. Id. He alleges that he was repeatedly shoved into the walls and doorframes by the individual Defendants as he made his way down the hall. Id. At one spot that was blind to the ACJ's video surveillance system, one individual Defendant struck Plaintiff in the face with his knee, causing Plaintiff to momentarily lose consciousness. Id. at ¶ 33.

Plaintiff contends he was then thrown onto a medical gurney, at which point a nurse gave him a brief medical examination and determined that he needed to go to the hospital. Id. at ¶¶ 34-35. Plaintiff further contends that his uniform was changed prior to his transportation to the

hospital so that the evidence of the assault could be destroyed (i.e., bootprints, feces, and blood). Id. at ¶ 36. He maintains that the individual Defendants used unnecessary and excessive force to accomplish the task and then forced him into a restraint chair to wait for several hours before transporting him to the hospital. Id. at ¶¶ 37-38. Contrary to ACJ custom and policy, Plaintiff was transported to the hospital in an ACJ vehicle with no paramedic present. Id. at ¶ 38.

### B. Continued Mistreatment

Plaintiff was taken to UPMC Mercy Hospital where hospital personnel examined his left wrist and back by x-ray and his head by MRI. Id. at ¶ 39. Plaintiff was provided with a prescription for Motrin and a referral and appointment with a specialist for surgical repair of a deviated septum. Id. He was then returned to the ACJ and never transported to his surgical appointment. Id.

The following day, Plaintiff was transported to a hearing in Cecil Township, Washington County for an unrelated matter. Id. at ¶ 40. The constable who transported Plaintiff to the hearing took pictures of Plaintiff's face with his mobile phone, allegedly to protect himself from any claims that he was responsible for Plaintiff's injuries. Id. When Plaintiff was returned to the ACJ, he was housed in a psychological observation room even though he contends that he never demonstrated a risk of harm to himself or others. Id. at ¶ 41. The next day, an ACJ employee, presumably Captain Pofi, took photographs of Plaintiff. Id. Plaintiff remained in the psychological observation room for over a month, allegedly for the sole purpose of restricting his access to writing instruments necessary for completing a formal written complaint. Id. at ¶ 42. Plaintiff was then transferred to a Restricted Housing "shoe" where he feared for his safety due to the fact that one of the individual Defendants was assigned to the "shoe." Id. at ¶ 43.

4

After Plaintiff's prescription for Motrin expired, the ACJ offered Plaintiff Tylenol on several occasions, even though he had indicated a medical allergy to Tylenol during intake. Id. at ¶ 44. Plaintiff alleges he was given neither the prescribed Motrin nor a reasonable alternative. Id.

Plaintiff contends that he made a number of informal complaints to correctional officers regarding the assault on April 6, 2010, but no staff member attempted to resolve the matter and no one asked Plaintiff to initiate a standard complaint. Id. at ¶ 45. Plaintiff made numerous requests for a complaint form and a pencil and no staff member provided them to Plaintiff despite ACJ policy that requires personnel to provide a complaint form upon request. Id. at ¶ 46. According to Plaintiff, this was done as part of an unwritten policy, practice and custom among ACJ personnel to deny access to the complaint process to prisoners who had been assaulted by guards. Id. at ¶¶ 48-49. Eventually, Plaintiff was able to obtain a complaint form and a pencil from an inmate in a neighboring cell, and he submitted the complaint which addressed all of the events of April 6, 2010. Id. at ¶ 50. However, he received no response to his complaint because he was thereafter released from ACJ custody and committed to the custody of the Pennsylvania Department of Corrections upon pleading guilty to a charge of attempted escape and criminal mischief. Id. at ¶¶ 50-51. Because he was released prior to receiving a response to his complaint, he no longer had standing with respect to administrative remedy. Id. at ¶¶ 47, 51.

**C. Incomplete Reporting of the Events of April 6, 2010**

According to Plaintiff, Captain Douglas Maust ordered all staff and officers "directly involved" with the April 6, 2010 incident to submit incident reports pursuant to the ACJ Use of Force Policy. Id. at ¶¶ 52-56. With respect to the individual Defendants named herein, only Donis, McGovern, Smarra, and Williams filed incident reports. Id. at ¶ 57. The others did not

and no supervisor required them to do so despite the fact that they were allegedly involved in or witnessed the incident on April 6, 2010. Id. ¶¶ 57-58. The incident reports that were filed state that Plaintiff had lacerations on his arms and hands, he was bleeding from his facial area, and he was escorted to medical, but none state that Plaintiff was struck with a closed fist by an ACJ employee. Id. at ¶ 59. Defendant Donis, however, later amended his initial report and admitted that he struck Plaintiff several times with a closed fist and his report allegedly made it clear that other individual Defendants were present for these events. Id. at ¶ 60. Donis further stated in his amended report that the warden never investigated the incident. Id. at ¶ 64. The ACJ did not obtain incident reports from any individual Defendant after Donis amended his report disclosing that he had struck Plaintiff with a closed fist. Id. at ¶ 62.

### D. Knowledge of Other Incidents and Failure to Act

Plaintiff maintains that the ACJ was aware of previous incidents where guards had used excessive force but that the ACJ, in disregard of a substantial risk of harm to inmates, failed to take any actions or implement any policies regulating the amount of force used by ACJ personnel. Id. at ¶ 67. Specifically, Plaintiff refers to incidents that occurred in 2007, 2008, 2009, and 2010, whereby ACJ inmates sustained serious injuries from assaults or excessive use of force by ACJ employees. Id. at ¶¶ 68-71.

### E. Injuries

Plaintiff maintains that he has been diagnosed with permanent nerve damage in his left arm and back due to the assault that occurred on April 6, 2010. Id. at ¶ 73. He states that he continues to experience increasing pain and numbness in his left arm, weakness when lifting with his left arm, lower back pain, a deviated septum, a diminished sense of smell, and impaired vision. Id. Before his incarceration, Plaintiff was employed as a construction worker, and, due

to his injuries, he doubts that he will be able to return to construction work upon his release from state custody. Id.

### III. Standard of Review

Defendants have filed Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). When deciding whether the grant or deny a 12(b)(6) motion the Supreme Court has held:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief **requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do**. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atlantic Co. v. Twombly, 550 U.S. 544, 555 (2007) (cites and footnote omitted) (emphasis added); *see also*, Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (a plaintiff's factual allegations must be enough to raise a right to relief above the speculative level).

Most recently, in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court held, ". . . a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citations omitted).

In Iqbal, the Court specifically highlighted the two principles which formed the basis of the Twombly decision: First, for the purpose of a motion to dismiss, courts must accept as true all factual allegations set forth in the complaint, but courts are not bound to accept as true any legal conclusions couched as factual allegations. Id. at 1949-50. *See also*, Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009). Second, a complaint will only survive a motion to

dismiss if it states a plausible claim for relief, which requires a court to engage in a context-specific task, drawing on the court's judicial experience and common sense. Id. at 1950. Where well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not shown – the complainant is entitled to relief. Id., *citing* Fed.R.Civ.P. 8(a)(2).

## IV. Discussion

As noted above, Plaintiff's Amended Complaint contains ten Counts. Counts I, III, V, VII, IX, and X of Plaintiff's Amended Compliant are directed at the individual Defendants and Counts II, IV, VI, VIII are directed at Defendant Allegheny County. Both the moving individual Defendants[1] and Defendant Allegheny County move to dismiss Counts III through VIII of Plaintiff's Amended Complaint for the same reason. The moving individual Defendants also move to dismiss Counts IX and X of the Amended Complaint on the basis of governmental immunity and the remaining Counts based on their lack of personal involvement in any wrongdoing. Defendant Allegheny County moves to dismiss on the ground that Plaintiff has failed to identify a policy or custom which caused his injuries. Each argument will be addressed *seriatim*.

### A. Counts III-VIII

The moving Defendants move to dismiss Counts III through VIII of Plaintiff's Amended Complaint. These Counts raise claims pursuant to the Fourth and Eighth Amendment, and since Plaintiff pleads that he was a pretrial detainee at the time of the alleged events, Defendants assert that his claims are properly evaluated under the Fourteenth Amendment, which he pleads in

---

[1] The moving individual Defendants include all individual Defendants with the exception of Defendant Donis who is represented by separate counsel.

Counts I and II, and that Counts III through VIII must be dismissed. The Court notes that Plaintiff has plead Count III through VIII in the alternative on the assumption that he was an inmate rather than a pretrial detainee at the time the alleged events occurred. Plaintiff maintains that he has not had the benefit of discovery to confirm his custody status and he has thus set forth alternative claims based upon a reasonable possibility that discovery might reveal that he was an inmate rather than a pretrial detainee.

Federal Rule of Civil Procedure 8(d)(2)-(3) states that a plaintiff may plead claims for relief in the alternative. Here, discovery will further develop whether Plaintiff was a pretrial detainee or inmate at the time the alleged events occurred. At this stage, Plaintiff has demonstrated a good-faith basis that either is possible. As the Federal Rules of Civil Procedure allow a plaintiff to plead in the alternative, the Court will not dismiss Counts III through VIII at this time. However, should discovery reveal that Plaintiff was a pretrial detainee at all material times, his claims will be governed by the Fourteenth Amendment.

### B. Allegheny County

Defendant Allegheny County seeks dismissal for failure to state a claim. Specifically, Defendant asserts that "Plaintiff fails to adequately identify any specific policy or custom which violates his constitutional rights" and that it cannot be held liable for the actions of its employees under the doctrine of *respondeat superior*. (ECF No. 41 at 6.)

Under section 1983, a local government is subject liability "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of by the plaintiff. Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). Monell, thus, created a "two-path track" to municipal liability, depending on whether a section 1983 claim is

premised on a municipal policy or custom. Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).

In Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir. 1990), the Third Circuit expanded on these two sources of liability:

> A government policy or custom can be established in two ways. Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law.

Id. at 1480 (quoting Beck, 89 F.3d at 971) (citations omitted). Custom requires proof of knowledge and acquiescence by the decisionmaker. Watson v. Abington Twp., 478 F.3d 144, 154 (3d Cir. 2007); Beck, 89 F.3d at 971.

Under either route, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citing Andrews, 895 F.2d at 1480)). In order to determine who has policymaking responsibility, "a court must determine which official has final, unreviewable discretion to make a decision or take an action." Andrews, 895 F.2d at 1481.

"Once a § 1983 plaintiff identifies a municipal policy or custom, he must 'demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged.'" Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) (quoting Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997) (internal quotations omitted)). "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and

the deprivation of federal rights." Bryan County, 520 U.S. at 404. If "the policy or custom does not facially violate federal law, causation can be established only by 'demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences.'" Berg, 219 F.3d at 276 (quoting Bryan County, 520 U.S. at 407) (internal quotations omitted); *see also* City of Canton v. Harris, 489 U.S. 378, 389 (1989).

To survive Defendant Allegheny County's Motion to Dismiss, Plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was." McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009). He also must allege that the custom or policy was the "moving force" behind the constitutional violations in that Allegheny County was "deliberately indifferent to the possibility that such [ ] violation[s] would occur." Grayson v. Mayview State Hosp., 293 F.3d 103, 107-08 (3d Cir. 2002) (citing Bryan County, 520 U.S. at 407).

Here, Plaintiff alleges that Allegheny County policies and/or customs resulted in violations of his constitutional rights. Specifically, he alleges that there was an existing policy for the use of force at the ACJ but that it was ineffective and not enforced. *See, generally,* ECF No. 33 at ¶¶ 52-66. He further alleges that, out of blatant disregard for the use of force policy and because it was not enforced, the ACJ had a custom of tolerating excessive force and permitting and encouraging employees to abuse inmates and detainees. Id. Additionally, he alleges that ACJ supervisors were aware of these customs and not only acquiesced in them but supported them. Id. Finally, he alleges that the ACJ was aware of numerous prior incidents of constitutional violations and it was deliberately indifferent to the substantial risk of unnecessary harm to its inmates by failing to take appropriate responsive action. Id. at ¶¶ 67-72.

His allegations are similar to those presented in Beck, 89 F.3d at 971, where the plaintiff claimed that the city maintained a custom or policy of tolerating the use of excessive force by its

officers. In that case, the district court granted defendant's motion for judgment as matter of law and, on appeal, the Third Circuit reversed holding that the question as to whether the defendant knew about and acquiesced in a custom tolerating the tacit use of excessive force was a fact question for the jury. After a review of the Amended Complaint, the Court finds that Plaintiff has sufficiently stated a plausible claim against Allegheny County such that dismissal is not warranted at this stage.

### C. Personal Involvement

The moving individual Defendants assert that Plaintiff has failed to state a claim against them based on their lack of personal involvement in any wrongdoing. To establish personal liability against a defendant in a section 1983 action, that defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Rode, 845 F.2d at 1207. However, alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement; allegations "must be made with appropriate particularity." Id.

Additionally, although it appears to be inapplicable here, a supervisory defendant can be held liable if he or she played an "affirmative part" in the complained-of misconduct. *See* Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986) (citing Rizzo v. Goode, 423 U.S. 362, 377 (1976)). Recently, the Third Circuit specified certain instances whereby it had held that a supervisor could be liable in a section 1983 action. In Argueta v. United States Immigration & Customs Enforcement, 643 F.3d 60 (3d Cir. 2011), the court stated:

> . . . "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also*, *e.g.*, Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010) ("Instead, Santiago's allegations appear to invoke a theory of liability under which 'a supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.'") (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)) (footnote omitted)). "It is also possible to establish section 1983 supervisory liability by showing a supervisor tolerated past or ongoing misbehavior." Baker v. Monroe Township, 50 F.3d 1186, 1191 n.3 (3d Cir. 1995) (citing Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 724-25 (3d Cir. 1989)). We further indicated that a supervisor may be liable under § 1983 if he or she implements a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate and the supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct. *See*, *e.g.*, Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir. 2001).

Argueta, 643 F.3d at 72.

In the Amended Complaint, Plaintiff alleges that every application of force occurred after he had surrendered and without any resistance by him and that the use of force served no purpose other than to punish him for attempting to escape. *See* ECF No. 33 at ¶¶ 21-22, 29, 50, 66. He alleges that each individual Defendant was in the immediate vicinity of the assault and either directly participated or had a reasonable opportunity to intervene but failed to do so. Id. at ¶¶ 20-21, 23-27, 29-34, 36-38, 57, 60-61, 65-66. He further alleges that the individual Defendants all conspired to commit the acts and conceal them after the fact by, *inter alia*, failing to report the events as ordered or as they actually occurred. Id. at ¶¶ 19, 36, 48, 56-66. While discovery may reveal more detail about how each individual Defendant was involved and might disclose that summary judgment in favor of certain Defendants is appropriate, the Court is satisfied that Plaintiff has alleged sufficient facts demonstrating personal involvement against all the

individual Defendants. As such, the moving individual Defendants' Motion to Dismiss will be denied based on lack of personal involvement.

### D. Counts IX and X – State Tort Claims

As to Plaintiff's state tort law claims of assault and battery in Counts IX and X, the moving individual Defendants assert that they are immune from suit under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S. §§ 8541 *et seq*. The PSTCA grants governmental immunity to local agencies, including municipalities, against claims for damages on account of any injury to a person or to property caused by their own acts or the acts of their employees. Immunity is abrogated, however, for negligent acts falling into one of eight proscribed categories: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals. 42 Pa. C.S. § 8542(b).

An employee of a local agency acting within the scope of his duties enjoys the same immunity as the local agency, 42 Pa. C.S. § 8545, but the employee may be stripped of his immunity when he engages in conduct that is found to constitute "a crime, actual fraud or willful misconduct," id. § 8550. In other words, the PSTCA extends immunity to negligent acts by employees, except those falling into the eight proscribed categories, but abrogates immunity for individual employees who commit intentional torts. *See*, *e.g.*, Maloney v. City of Reading, No. 04-5318, 2006 U.S. Dist. LEXIS 4759, 2006 WL 305440, at *5 (E.D. Pa. Feb. 8, 2006).

Here, Plaintiff's Amended Complaint sufficiently states claims against the moving individual Defendants based on the intentional torts of assault and battery. Thus, they are not entitled to immunity under the PSTCA.[2] An appropriate order follows.

**AND NOW** this 5th day of October, 2012;

**IT IS HEREBY ORDERED** that the Motion to Dismiss filed by Defendant Allegheny County (ECF No. 40) and Defendants Coulter, Mazzocca, McGovern, Metz, Smarra, Springel, Williams and Zoller (ECF Nos. 55, 57) are **DENIED**.

Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: All Counsel of Record
*Via ECF Electronic Mail*

---

[2] The Court notes that many of the cases to which the individual Defendants cite to and rely on in support of their contention that they are entitled to immunity are distinguishable in that they involve Commonwealth defendants entitled to sovereign immunity, even for intentional torts, pursuant to 1 Pa. C.S. § 2310.